

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

RECEIVED
AUG 13 2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JUAN MORALES-AGUILAR,
    Plaintiff,

v.    Case No.:

UNITED STATES OF AMERICA,
HUGH J. HURWITZ, DIRECTOR OF
    THE FEDERAL BUREAU OF PRISONS;
ANGELA OWENS, WARDEN MCC CHICAGO;
N. DIFE, HEALTH SERVICES ADMIN.
           MCC CHICAGO;
BRIJ MOHAN, CLINICAL DIRECTOR
           MCC CHICAGO;
R. KISTLER, MID-LEVEL PROVIDER
           MCC CHICAGO;
C HURT, RN, NURSE    MCC CHICAGO;
OFC. MARTIN, CORRECTIONAL OFFICER
           MCC CHICAGO;
OFC. JONES, CORRECTIONAL OFFICER
           MCC CHICAGO;
INDIVIDUALLY AND IN THEIR OFFICIAL
CAPACITIES,
    Defendants.

1:19-cv-05505
Judge Virginia M. Kendall
Magistrate Judge Maria Valdez
PC5

## COMPLAINT

### I. JURISDICTION AND VENUE

1. This is a civil action pursuant to the Federal Tort Claims Act under Title 28 USC 1346(b), and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. CT. 1999 29 L. Ed 2d 619 (1971), to redress the deprivation of rights secured by the Constitution of the United States, and to redress injuries sustained due to negligence on the part of employees of the United States Federal Government. The Court has jurisdiction under Title 28 USC § 1331 and §1343(a)(3). Plaintiff seeks declatory relief pursuant to Title 28 USC §2201 and §2202. Plaintiff's claims for injuctive relief are authorized by Title 28 USC §2283 and §2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The United States District Court for the Northern District of Illinois, Eastern Division, is an appropriate venue under Title 28 USC §1391(b)(2) because it is where the events giving rise to this claim occured.

## II. PLAINTIFF

3. Plaintiff, Juan Morales-Aguilar, Federal Register Number 15512-280, is and was at all times mentioned herein a prisoner of the United States of America in the custody of the Federal Bureau of Prisons. He is currently confined at Federal Correctional Institution, El Reno, in El Reno, Oklahoma. His mailing address being Federal Correctional Institution, PO Box 1500, El Reno, OK 73036.

## III. DEFENDANTS

4. Defendant, United States of America, is civilly liable for the actions of it's federal employees.
5. Defendant, Hugh J. Hurwitz, is the acting Director of the Federal Bureau of Prisons. He is legally responsible for the overall operation of the Federal Bureau of Prisons and each institution under it's jurisdiction, including Metropolitan Correctional Center(MCC), Chicago.
6. Defendant, Angela Owens, is the Warden of MCC, Chicago. She is legally responsible for the operation of MCC, Chicago and for the welfare of all inmates in that prison.
7. Defendant, N. Dife, is the Health Services Administrator of MCC, Chicago, she is legally responsible for the administrative duties and operation of the Health Services Unit at MCC, Chicago, including oversight of the Clinical Director.
8. Defendant, Dr. Brij Mohan, MD, is the Clinical Director of MCC, Chicago. He is legally responsible for the medical care of all inmates at MCC, Chicago.
9. Defendant, R. Kistler, NP, is a Mid-Level Provider at MCC, Chicago. She is legally responsible for the medical care of inmates at MCC, Chicago, including the Plaintiff.
10. Defendant, C. Hurt, RN, is a registered nurse at MCC, Chicago. She is legally responsible to provide medical care to inmates at MCC, Chicago.
11. Defendant, Officer Martin, is a Correctional Officer for the Federal Bureau of Prisons, who at all times mentioned in this complaint, was assigned to MCC, Chicago. He was the Duty Officer in charge of Unit D-15th Floor at MCC, Chicago on August the 6th of 2017 at the time of the incident that led to the injury of the Plaintiff.

12. Defendant, Officer Jones, is a Correctional Officer for the Federal Bureau of Prisons, who at all times mentioned in this complaint was assigned to MCC, Chicago. She was the Duty Officer in charge of Recreation at MCC, Chicago on August the 6th of 2017 at the time of the incident that led to the injury of the Plaintiff.
13. Each Defendant is sued individually and in his/her official capacity. At all times mentioned in this complaint each defendant acted under the color of federal law.

## IV. FACTS

14. a. Incident

    On the 6th day of August, 2017, Juan Morales-Aguilar (Plaintiff) was a prisoner of the Federal Buraeu of Prisons designated to the pre-trial unit of MCC, Chicago. At approximately 3:00 p.m. Plaintiff, while walking from Section Three (3) to Section One (1) of Unit D-15th Floor, slipped and fell on a wet floor. The floor of the walkway which Plaintiff slipped and fell on was wet due to a clogged drain in the lower tier showers. This clogged drain was causing water to leak from the shower area onto the walkway. This caused a dangerous condition for both inmates and staff members, however no attempt was made to repair the clogged drain, clean the water from the walkway, or place warning devices in the affected area. This dangerous condition is caused by negligence on the part of Defendant, Officer Martin, a Federal Employee of the United States of America, and who was assigned to the Housing Unit in which the conditions occured/existed. The Housing Unit Officer is required by Federal Bureau of Prisons(FBOP) Policy, Program Statement P1600.11(n) to "immediately report hazards or unsafe acts to their supervisors and/or to the Environmental and Safety Compliance Department(ESCA)" Officer Martin's failure to take appropriate measures to ensure the safety of all who enter the housing unit to which he is assigned, staff and inmate alike, consitutes negligence to his official duties. This incident was captured on CCTV and the Plaintiff presents that there are eye witnesses to the event and the circumstances leading to the event.

    b. Additional Facts regarding the Incident

    Directly following the slip and fall, Plaintiff immediately felt pain in his right leg, both hips, lower back, and his neck. The pain was severe in nature and he was bleeding from the right knee.

Plaintiff reported the injuries to Housing Unit Duty Officer Martin with Recreation Duty Officer Jones present. Plaintiff requested medical attention at the time the injuries were reported and advised both officers to the nature and extent of his injuries, but Officer Martin declined to notify the Health Services Unit or to log the incident in a formal report. Officer Jones failed to intervene despite being present and having a duty to do so. Both officers acted negligently and with deliberate indifference to an obvious serious medical need. Finally, both officers were acting under color of federal law at all times described above.

15. Medical Care Received

    a. August 6th, 2017 at approximately 7:00 p.m., Plaintiff reported to "evening medication line"[Exhibit A], where inmates prescribed medications inappropriate to "self-carry" report to receive their evening dosage. Inmates who request refills on medications that are appropriate for "self-carry" also report at this time to pick-up said refill. "Evening medication line" is not generally a proper time to report to request medical care or intervention but Defendant C. Hurt, RN, who was on duty for "evening medication line ", provided plaintiff with a bandage for his knee and a (3) three day supply of ibuprofen for pain. Hurt however failed to properly triage the extent of Plaintiff's injuries to determine the level of urgency a back/neck injury can present. Plaintiff pleaded with C. Hurt for further medical care at this time but was only told that x-rays will be ordered.

    b. On or about August 14, 2017, Plaintiff was seen by MCC, Chicago Health Services Unit, X-Ray technician, for diagnostic imaging previously ordered by Defendant, Dr. Brij Mohan, MD, Clinical Director for MCC, Chicago. These x-rays were ordered previous to the slip and fall incident on August 6, 2017, they were ordered at a routine intake screening in July of 2017, the imaging was ordered for only Plaintiff's right knee, right ankle, and lower back, none for the neck, cervical spine, or thorassic spine. [Exhibit B]

    c. August 16, 2017. Plaintiff was seen by MCC, Chicago, Health services Unit, Mid-Level Provider Defendant Ramona Kistler, NP.

Kistler asked the Plaintiff general questions about the type of accident that occured and where his pain was located, at this encounter. Plaintiff advised Kistler that he was having tightness and pain from his neck to the bottom of his feet. Further, Plaintiff advised her that a "knot" had appeared oh his right glute and that it was sensitive to pressure. Kistler diagnosed (incorrectly) the injury as neck joints/ligaments sprain and recommended stretching and self-massage to mitigate pain and other syptoms presented. This encounter is documented and is provided as [Exhibit C].

d. October 13, 2017, the Plaintiff was seen by MCC, Chicago, Health Services Unit, Clinical Director, Dr. Brij Mohan, MD. This encounter was following an informal resolution attempt at Administrative Remedy. Plaintiff advised Dr. Mohan that his condition was worsening rather than improving, that all attempts at mitigating pain were not succeeding, and pleaded to be recommended for a consult with a medical expert for back injuries and an M.R.I. to diagnose soft tissue damage that may have occured in the fall but was not visible on any x-rays taken following the fall. This encounter is documented and is provided as [Exhibit D].

e. November 9, 2017, the Plaintiff was seen by MCC, Chicago, Health Services Unit, Clinical Director, Dr. Mohan, for a follow-up sick-call visit. Pain medications were changed and Physical Therapy was recommended. This encounter was documented and is provided as [Exhibit E].

f. November 28, 2017, December 5, 2017, December 21, 2017, Plaintiff reported to MCC, Chicago, Health Services Unit for Physical Therapy sessions with Dr. Zeeshan Bhatti, DPT. Plaintiff attempted to participate in stretching exercizes and range of motion exercizes but advised Dr. Bhatti at that time the pain was too intense to continue. These encounters were documented and are provided as [Exhibit F].

g. January 2, 2018, Plaintiff advised Dr. Bhatti that he could not continue Physical Therapy because the treatments were worsening his condition rather than improving it. Plaintiff refused further

Physical Therapy treatment, but declined to sign any refusal form. This encounter was documented and is provided as [Exhibit G].

h. March 1, 2018, the Plaintiff was seen for a follow-up visit with Dr. Mohan. Dr. Mohan, at this encounter, requested an MRI for Lumbar Spine. This request for an MRI is very nearly 7 months from the date of the injury. Plaintiff advised Dr. Mohan that his condition has continued to deteriorate instead of improve and that the lower back pain he'd been suffering from has started to radiate to his lower legs. This encounter is documented and is provided as [exhibit H].

i. April 9, 2018, the Plaintiff presented for Magnetic Resonance Imaging(MRI) without contarst. This diagnostic imaging, after being delayed 8 months, showed soft-tissue damage between the L4 and L5 discs and between the L5 and S1 disc. This report is documented and is provided as [Exhibit I].

The above encounters are the extent of the medical care provided to the Plaintiff during his incarceration at MCC, Chicago. Following the April 9, 2018 diagnostic imaging, Plaintiff was transferred to Federal Correctional Institution, Berlin, where a lack of medical care continued. Please note that Plaintiff requested medical assistance on many more occasions than were provided and has provided documentation of his attempts at communicating his need via all inmate-request-to-staff electronic messaging that took place at MCC, Chicago as [Exhibit J] and that took place at FCI, Berlin as [Exhibit K], between medical staff and himself.

16. Medical Condition Prior to Incident(August 6, 2017)
    a. Plaintiff lived an ordinary, relatively pain free life prior to the August 6, 2017 slip and fall. In fact, Plaintiff was examined by Nurse T. Janca, RN, at MCC, Chicago for an initial health screening on the 28th day of JUne,2017[Exhibit L], just weeks before the incident, and again on the 6th day of July, 2017 by Dr. Mohan[Exhibit M]. In either examination did the health care professionals note any history of medical conditions that relate to symptoms from which the Plaintiff currentlt suffers. Vital signs taken at these encounters show Plaintiffs blood pressure as 128/84. Further, on the 9th day of June, 2015, just

two(2) years prior to the incident, MRI diagnostic imaging from MCC, Chicago show findings and conclusions all to be negative, including no showing of anterior endplate degenerative loss defect formation at L4 and L5 or mild facet arthropathy at L5 and S1. These findings are documented as [Exhibit N]. The only medical history worth noting in the Plaintiff's adult life is a gunshot wound in the right buttocks from 2002. Current imaging shows the metal fragments remaining in Plaintiff's right femur, but also that they do not interfere with his everyday life and have no causation of his current symptoms.

b. Plaintiff had gainful employment before his incarceration and had many years experience in the residential and commercial construction fields with somewhat of an expertise in roofing and repair. While working in this field Plaintiff had no physical limitations on his working abilities and was suffering from no symptoms of which he now suffers. His earnings were $45,000 to $60,000 annually.

17. Medical Condition Following the Incident(August 6,2017)
a. Plaintiff has suffered back pain, neck pain, hip pain, and pain now radiates through his lower extrimities. All this pain onset at the time of the slip and fall on August 6, 2017. His condition has worsened rather than improved and he now has serious difficulty with bowel movements, urination, and ejaculation. All of these sypmtoms are indicative of a back injury or spinal injury, but until the Bureau of Prisons sees it as necessary to refer his case to an expert in the field of back/spinal injury the Plaintiff can get no real diagnosis, he can only present his symptoms and plead for help from the seemingly deaf ears of Bureau of Prisons, Health Care Professionals, which he has done since the beginning of his pain and continued to the filing of this document. Plaintiff's only real indication that something more serious than what Bureau of Prisons staff are describing is wrong with him, other than his level of pain, is the fact that his vital signs, which just weeks before the incident, were all in the normal range, have since the fall gone awry, including his blood pressure, which MCC, Chicago refused to document following the incident.

b. Plaintiff's quality of life, which before the incident was normal and included exercize and working, has greatly been impacted by the August 6, 2017 slip and fall. He is now nearly unable to exercize, is unable to hold a work assignment. Because of the new, nearly static lifestyle the Plaintiff must lead, he has gained 25 pounds which only compounds the stress on his back and limbs, and exacerbates the already high blood pressure he is suffering from since the incident. High blood pressure is known to cause cardiovascular problems. The full extent of the Plaintiff's loss of quality of life is unknown at this time, and will likely stay unknown without the Court's intervention.

## V. EXHAUSTION OF LEGAL REMEDIES

18. a. Plaintiff filed the Standard Form 95 claim for damage, injury, or death, to the correct office of the Federal Government on the 31st day of July, 2018, as prescribed by statute. This claim was denied by the Bureau of Prisons' North Central Regional Office, Regional Counsel on the 12th day of December, 2018. Title 28 CFR §14.9 mandates that an applicant may file suit in an appropriate U.S. District Court no later than 6 months from the date of mailing of the notification of denial. This deadline to file would have been the 11th day of June, 2019, however the Plaintiff prays that the Court will decide that the equitable tolling of the six-month period was interrupted and intervened by the Plaintiff being placed in transit status, with no access to the courts or to legal papers contained in his property, from the 8th day of March, 2019 through the 1st day of April, 2019, and then was placed in the segregated housing unit(SHU) from the 17th day of April, 2019 through the 12th day of June, 2019, again with no access to the courts or personal property. This constituted a three(3) month period with limited or no access to the courts, therefore Plaintiff requests that the equitable tolling period be suspended during that three-month period extending the daedline to file suit until the 12th day of September, 2019.

b. Plaintiff used the prisoner grievence procedure available at MCC, Chicago to try and solve the problems of access to medical care. On the 27th day of November, 2017, Plaintiff presented the

(8)

facts relating to this complaint. On the 15th day of December, 2017, Plaintiff was sent a response saying that the grievence had been denied. On the 28th day of January, 2018, he appealed the denial of the grievence to the North Central Regional Office of the Federal Bureau of Prisons. This Regional appeal was denied on the 28th day of February. On the 20th day of March, 2018, Plaintiff filed the final level of prisoner grievance appeal to the Central Office of the Bureau of Prisons, this appeal was denied on the 23rd day of April, thus exhausting the administrative remedy process of the Federal Bureau of Prisons. Thereby this Complaint is procedurally sound and statutorily compliant to proceed at this level.

c. Documentation of the exhaustion of legal remedies is provided as [Exhibit O].

## VI. LEGAL CLAIMS

19. Plaintiff realleges and incorporates by reference paragraphs 1 through 18.

20. The unsafe condition which led to injury of the Plaintiff and the deliberate indifference to his serious medical needs violated the Plaintiff's rights and constituted cruel and unusual punishment as well as a due process violation under the Eigth and Fourteenth Amendments to the United States Constitution.

21. The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the declaratory and injunctive relief which Plaintiff seeks.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgement granting Plaintiff:

22. A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

(9)

23. A preliminary and permanant injunction ordering the Defendants to provide the Plaintiff adequate medical care for injuries sustained due to the negligence on their part. This medical care should include a referral to be examined by a medical specialist in the field of back/spinal injuries and proper medical devices and medications be provided as determined to be necessary by such specialist.

24. Compensatory damages in the amount of $3,000,000.00 against each Defendant, jointly and severally.

25. Punitive damages in the amount of $3,000,000.00 against each Defendant.

26. A jury trial on all issues triable by jury.

27. Plaintiff's costs in this suit.

28. Any additional relief this Court deems just, proper, and equitable.

Dated this 2nd day of august, 2019.

Respectfully Submitted,

*Juan Morales-Aguilar*
Juan Morales-Aguilar
#15512-280
Federal Correctional Inst.
PO Box 1500
El Reno, OK 73036

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except to matters alleged on information and belief, and, as to those I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct. (28 USC §1746; 18 USC §1621)

Exectued at El Reno, Oklahoma on 5th/august 2019.

*Juan Morales-Aguilar*
Juan Morales-Aguilar

(10)