THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN MORALES-AGUILAR, | ) |
|                *Plaintiff*, | ) No. 19 C 5505 |
| v. | ) Judge Virginia M. Kendall |
| UNITED STATES OF AMERICA, | ) |
|               *Defendant*. | ) |

## MEMORANDUM OPINION & ORDER

Juan Morales-Aguilar, an inmate in the Chicago federal correctional center, slipped and fell while taking a shower. He filed a complaint with the Bureau of Prisons ("BOP") seeking to recover damages for the alleged tort. The BOP denied his claim on December 12, 2018; Morales had until June 12, 2019, to file a complaint in federal court or his claim would be time-barred. He mailed his complaint on August 5, 2019. The United States now moves for summary judgment. (Dkt. 65). For the following reasons, the motion is granted. (*Id.*)

## BACKGROUND

Morales was an inmate housed in Unit 15 of the Metropolitan Correctional Center, Chicago ("MCC"). (Dkt. 72 ¶¶ 3–4). On August 6, 2017, Morales fell while taking a shower. (*Id.* ¶ 41). The next year, on April 6, 2018, Morales was sentenced to eighty-four-months' imprisonment. (*Id.* ¶ 52). Following sentencing, he was transferred from the MCC to Federal Correctional Institution Berlin ("FCI Berlin") in New Hampshire. (*Id.* ¶ 53). There, he mailed a "Standard Form 95," containing the details of his slip-and-fall tort claim against the government. (*Id.* ¶ 54). The BOP

1

received the form "without incident." (*Id.*) The BOP denied the claim and mailed Morales a "denial of his administrative tort claim" on December 12, 2018, which he received six days later. (*Id.*)

Upon receipt of the denial letter, Morales had six months to file a lawsuit in federal district court (June 12, 2019). (*Id.* ¶ 56). For the remainder of his time at FCI Berlin, from December 2018 through early March 2019, Morales had access to legal materials, access to a law library, and the ability to mail documents. (Dkt. 67 ¶ 57).[1] He even admitted that he did not need any other information or documents to file the federal complaint and that he used the law library in drafting documents. (Dkt. 67-2, Ex. 3 at 26:7–26:9; *id.* at 26:10–26:13). He did not file a complaint at FCI Berlin because "nobody want[ed] to help" him. (*Id.* at 26:1).

On March 8, 2019, Morales was moved to the Metropolitan Detention Center, Brooklyn ("MDC Brooklyn") for three weeks. (Dkt. 72 ¶ 59). There, officials placed him in the Special Housing Unit because of past gang affiliation. (*Id.*) Morales never requested law-library access at the facility because he was only scheduled for a short stay and did not have all the documents he wanted. (*Id.* ¶ 60). On April 1, 2019, Morales was transferred to Federal Correctional Facility El Reno ("FCI El Reno"). (*Id.* ¶ 61). Unlike at MDC Brooklyn, Morales was in the general population with unimpeded mail access and, he admits, the ability to file a federal complaint. (*Id.* ¶ 62). A little over two weeks later, El Reno corrections officer found narcotics on Morales, and for this offense, he was placed in the Special Housing Unit (SHU) on April 17, 2019. (*Id.* ¶ 64). Prison officials determined that Morales should be given a "disciplinary segregation status," meaning that he would be permitted one cubic foot of legal materials and two hours in the law library in the

---

[1] Morales questions this statement, (Dkt. 72 ¶ 57), but his deposition testimony supports the government's statement of fact. (Dkt. 67-2, Ex. 3 at 17:22). When asked "did you have access to their legal materials while you were" at FCI Berlin. (*Id.*) He answered, "Yes, Ma'am." (*Id.*) Aguilar says he "further testified that he was denied access to those materials, facilities and documents"—but never at FCI Berlin. (*Id.* at 33:21–36:21).

2

evening. (*Id.* ¶ 67). Morales claims, however, that he requested both his legal documents and law-library access to no avail. (Dkt. 67-2, Ex. 3 at 36:9–15, 38:15–22).

While under disciplinary-segregation protocols, Morales could mail any correspondence to federal court, which he took advantage of. (Dkt. 72 ¶¶ 69–70). For example, he sent a letter asking for legal assistance and acknowledging the impending deadline for his tort claim. (*Id.*) It reads, "I was working on my case but they put me in the [SHU] for no reason …. I don't have any of my legal papers …. I keep asking …." (Dkt. 67-3, Ex. 26). Morales then sent the court a letter in his unrelated criminal case, which also included a description of the facts for the tort complaint. (*Id.* Ex. 27). But Morales never sent a tort complaint to the court. What he "really … needed was assistance from another inmate." (Dkt. 67-2, Ex. 4 at 41:11–41:13).

Morales was released from the SHU on June 12, 2019. (Dkt. 72 ¶ 74). The next month, he filed a different complaint alleging violations of the Freedom of Information Act. (*Id.* ¶ 75). Then finally on August 5, 2019, he mailed his tort complaint to this court, claiming the United States is liable under the Federal Tort Claims Act for his slip-and-fall accident. (*Id.*) "The only reason he waited to mail his complaint had to do with the fact that he wanted assistance from another inmate in drafting it." (*Id.* ¶ 77). The United States moves for summary judgment because the action is time-barred and, alternatively, it was not negligent in maintaining the prison showers. (Dkts. 65, 66). The Court agrees the statute of limitations bars the claim and does not reach the government's alternative argument.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court construes all facts and draws all reasonable inferences in favor of the nonmoving

party. *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). "A genuine issue of material fact exists only if 'there is sufficient evidence'" for a jury to return a verdict for the nonmoving party. *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## DISCUSSION

The Federal Tort Claims Act waives the United States' sovereign immunity in suits "arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008). To prevail in a suit brought under the act, a plaintiff must first present his claim to the appropriate federal agency within two years after the claim accrues and then, if the agency denies the claim, file a lawsuit within six months of receiving the denial notice. 28 U.S.C. §§ 2401(b), 2675(a). Failure to comply with either requirement requires dismissal of the action. *Cf. McNeil v. United States*, 508 U.S. 106, 113 (1993). Morales acknowledges that he mailed his complaint outside of the six-month window, but he argues that deadline should be equitably tolled. *See United States v. Wong*, 575 U.S. 402, 420 (2015) ("[W]e hold that the FTCA's time bars are … subject to equitable tolling.").

Equitable tolling is a "form of equitable relief" that forgives "the claimant's error in not bringing suit within the appropriate time period [that] was made in good faith" by tolling the statute of limitations. *In re Mike's Inc.*, 337 F.3d 909, 912 (7th Cir. 2003); *see also Arellano v. McDonough*, 143 S. Ct. 543, 547 (2023) ("Equitable tolling 'effectively extends an otherwise discrete limitations period set by Congress.'" (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014))). The principle is applied "sparingly," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), because it is an "extraordinary remedy … rarely granted," *Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) (quoting *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016))

4

(cleaned up). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"[2] *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Morales falls short on both elements.

A plaintiff must act with reasonable diligence in pursuing a claim during the statute-of-limitations period. *See Carpenter*, 840 F.3d at 870. Morales did not. The BOP mailed him a "denial of his administrative tort claim" on December 12, 2018, which he received six days later. (Dkt. 72 ¶ 54). The mailing of the letter triggered the six-month deadline, and for much of the time period, the resources required to file his tort complaint were available—but Morales failed to use them. From December 2018 through early March 2019—over three months—Morales was at FCI Berlin, where he had legal materials, law-library access, and the ability to mail documents. (Dkt. 67 ¶ 57). He even admitted that he did not need any other information or documents and that he freely used the law library. (Dkt. 67-2, Ex. 3 at 26:7–26:9; *id.* at 26:10–26:13). He did not end up filing a complaint at FCI Berlin because he wanted help from a different prisoner. (*Id.* at 26:1).

For the next three weeks, while at the MDC Brooklyn, officials placed Morales in the SHU because of past gang affiliation, which led to a brief period without his legal materials and without the ability the use the law library. (*Id.* ¶ 60). But by April 1, 2019, Morales was transferred to FCI El Reno and placed in the general population with unimpeded mail access and the ability to file a federal complaint. (*Id.* ¶ 62). El Reno corrections officers then found narcotics on Morales, which

---

[2] Morales cites an unpublished, nonbinding district-court opinion for the proposition that "[w]hether equity requires tolling … is determined by looking at the amount of tolling needed to make plaintiff's suit timely and whether plaintiff is entitled to that amount of equitable tolling." (Dkt. 71 at 2 (citing *Lawrence v. United States*, No. 18 CV 1570, 2019 WL 6497368, at *3 (N.D. Ill. Dec. 3, 2019))). The length of delay in filing the suit *may* shed light on whether a plaintiff has diligently pursued relief—but neither the Supreme Court nor the Seventh Circuit has held that "equity *requires*" a look at the "amount of tolling" necessary. And Morales has not furnished a published opinion in support.

led to his "disciplinary segregation status." (Dkt. 67-2, Ex. 3 at 36:9–15, 38:15–22). Although Morales states that he could not get his legal materials, he could mail any correspondence to federal court, a service he used by sending a letter asking for legal assistance in light of the claim deadline. (Dkt. 72 ¶¶ 69–70). Nonetheless, Morales waited to send his complaint in this lawsuit because he "really … needed [] assistance from another inmate." (Dkt. 67-2, Ex. 4 at 41:11–41:13). Once released from the SHU, Morales never prioritized this lawsuit—instead, he filed a FOIA action. (Dkt. 72 ¶ 75). The "*only* reason he waited" was because "he wanted assistance from another inmate in drafting [his complaint]." (*Id.* ¶ 77; *see also* Dkt. 67-1, Ex. 4 at 45:21–48:20).

Collectively, Morales had several months to research, write, and send his complaint. But he did nothing, indicating that he was not diligently pursuing relief. Morales may not have had access to a law library or his materials for the entire six-month period (due to events he was responsible for—a past gang affiliation and drug possession). But "[t]he duty of reasonable diligence imposed by tolling doctrines is a *continuing* duty …." *Singletary v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 9 F.3d 1236, 1243 (7th Cir. 1993). Periods of interruption do not make up for the lack of diligence in long periods of potential work. *See Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) (rejecting equitable tolling where the prisoner was in segregation for sixty days). The plaintiff who neglects his lawsuit for months is not entitled to equitable tolling because of controllable and foreseeable events. *See id.* And there is no jailhouse-lawyer exception: the fact that Morales wanted to find someone to assist him is irrelevant. *Cf. Tucker v. Kingston*, 538 F.3d 732, 735 ("[S]tanding alone, the lack of legal expertise is not a basis for invoking equitable

6

tolling."). A plaintiff must show that *he*—not his friend—worked diligently in the pursuit of *his* claim—not in the pursuit of finding a friend to do his work. *See Tribe of Wisc.*, 577 U.S. at 255.

Morales fares no better in establishing that extraordinary circumstances prevented him from filing a lawsuit. Extraordinary circumstances require that "the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control." *Mayberry v. Dittman*, 904 F.3d 525 (7th Cir. 2018) (quoting *Menominee Indian Tribe*, 577 U.S. at 257). The circumstances here were neither extraordinary nor beyond Morales's control. An "extraordinary" circumstance is rare and usually involves attorney or claimant incapacity. *See, e.g.*, *Holland*, 560 U.S. at 649–50 (attorney's failure to follow professional standards of care); *Cantrell v. Knoxville Community Development Corp.*, 60 F.3d 1177, 1180 (6th Cir. 1995) (attorney incompetence); *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (petitioner's mental incapacity). Time without law-library access or legal materials is not extraordinary. *See Tucker*, 538 F.3d at 735 ("[A] prisoner's limited access to the prison law library is not grounds for equitable tolling"); *see also Molina-Garcia v. Fardon*, 754 F. App'x 475, 477 (7th Cir. 2019) ("[I]ncarceration, lack of resources, and ignorance of the law are not 'extraordinary circumstances' that merit equitable tolling."). It is rare for lawyers to have every resource desired; prisoners are even less fortunate, given the demands of a jail system.

Morales also bears responsibility for his delays. Prison officials placed him in the SHU because of past gang affiliation, the result of a choice he previously made. (Dkt. 72 ¶ 59). Moreover, his stay in special housing lasted only a few weeks; he was soon returned to a place with mail access and everything necessary to file a complaint. He was only moved to the SHU because officials found him with narcotics, a circumstance fully within his control. (*Id.* ¶ 64). The

7

"period of time in transit between prisons" and "his time in segregated housing and disciplinary segregation"—which are central to his equitable-tolling argument—resulted from his own actions.

## CONCLUSION

For these reasons, the Defendant's Motion for Summary Judgment is granted. (Dkt. 65).

_____
Virginia M. Kendall
United States District Judge

Date: March 6, 2023